SCHOTT, Chief Judge.
Defendant was convicted of second degree murder, LSA-R.S. 14:30.1, and sentenced to life imprisonment. On appeal he charges the state with failing to disclose information in advance of trial and contends the evidence was insufficient to support his conviction. We affirm.
On December 9, 1989, James McCoy was found dead in his New Orleans apartment. An autopsy revealed multiple stab wounds, including a wound to the neck which partly cut through the trachea and severed the jugular vein, blunt trauma to the head, and other bruises and contusions. McCoy’s roommate who discovered the body and called the police testified that several items had been stolen including stereo and computer components. The roommate also stated that McCoy was a homosexual and that Anthony Devereaux and Shawn Ruiz had been staying with him a few days prior to his death. On December 12, U.S. Customs agents in Texas stopped Devereaux and the defendant at the Mexican border. The subjects were in possession of some of the property stolen from McCoy.
The New Orleans Police obtained arrest warrant for the two, they picked them up in Texas, and, upon returning them to New Orleans, they charged them with McCoy’s murder. After several days in jail Dever-eaux summoned the detectives and gave them a lengthy statement. Further investigation revealed that a person in Shreveport bought some of the stolen items issuing a check to Devereaux and that when the two suspects were trying to get into Mexico Devereaux tried to pass the defendant off as the victim, James McCoy.
At trial Devereaux testified that he had been convicted in Texas for forgery and possession of stolen property and was on parole in Houston when he met the defendant. The two embarked on some sort of homosexual relationship. They decided to go to New Orleans with Ruiz even though this would constitute a parole violation by Devereaux. When they got there Dever-eaux and Ruiz engaged in male prostitution and Devereaux met McCoy at a bar frequented by homosexuals. They struck up a friendship and Devereaux spent the night at McCoy’s apartment. The next day they ran into Ruiz who joined them and the two of them spent the night with McCoy at his apartment. The following evening Dever-eaux contacted the defendant and he joined the three for dinner at McCoy’s.
After dinner Devereaux took a shower and upon returning to the living room he found defendant and McCoy fighting on the floor. Devereaux suggested that the defendant might have been jealous because of McCoy’s attention to him. During the struggle Devereaux turned up the stereo to mask the sound of the struggle in the upstairs apartment, at one point he got on top of McCoy to stop him from struggling, *867 and during the struggle he started disconnecting McCoy’s equipment. During this procedure he saw defendant dragging McCoy down the hall into a bedroom and he saw McCoy lying on the floor apparently dead. At no time did he see defendant with a knife during this struggle.
They loaded the equipment into the car and went to Shreveport where they sold the computer. Because the defendant made some remarks about killing Ruiz Devereaux persuaded the defendant to let him give Ruiz some money and send him home. He departed and Devereaux and defendant proceeded to Texas with the intention of fleeing to Mexico. During the trip defendant discarded “a rather long white-handled knife with two long blades or one long blade” which he had with him since they left Houston. They were apprehended at the border when agents became suspicious and learned that Dever-eaux was a parolee. Devereaux decided to make his statement to the New Orleans police when he heard rumors in the jail that the defendant told police that he (Dever-eaux) murdered McCoy.
A review of the record for errors patent reveals none.
By his first assignment of error defendant alleges that the state failed to make a timely disclosure of Brady material. At trial on November 19, 1990, Devereaux testified that he never saw defendant with a knife during his struggle with McCoy which was inconsistent with his previous statements. Defendant argues that his trial strategy was built on Devereaux’s anticipated testimony, that he saw defendant with a knife during the struggle and the sudden surprise change severely impacted his plan for the trial and was prejudicial.
The record contains an undated letter from the prosecutor to defense counsel which was filed into the record and alluded to by the trial judge at the beginning of the trial. It confirms a telephone conversation of November 16 in which the prosecutor told defense counsel that Devereaux was then stating that he did not see defendant with a knife in the living room, but did see it in the bedroom.
There is no indication that the state had any idea Devereaux would testify he never saw defendant with a knife during the struggle. On the contrary, the letter referred to above indicates the state was as surprised as the defense about this change. In any event there is not merit to defendant’s argument about being forced into a last minute change of strategy. He knew all along that Devereaux’s testimony would be the cornerstone of the state’s case. Whether Devereaux saw defendant with the knife or not under the only version of the facts defendant was the only one fighting with McCoy while his throat was slit with a knife. If anything this change inured to defendant’s benefit because it converted the state’s evidence of the fatal cutting from direct to circumstantial.
By his next assignment defendant asserts that the state failed to disclose it made a “deal” with Devereaux to obtain his testimony.
Prior to Devereaux’s testimony the prosecutor made the following statement to the court outside of the jury’s presence:
Your Honor, I’ve been ordered by my office to place this on the record as to whether or not any deals were made with Mr. Antonio Devereaux regarding his testimony today. There were no deals made initially with Mr. Devereaux. Mr. Devereaux was charged as an assessory after the fact based on the statement that he gave to the police officers. However, in light that he has changed his statement, the State is aware that he could be charged with a principal to second degree murder. However, if he chooses to testify truthfully today in this matter, he will not be charged with second degree murder.
However, Devereaux testified as follows:
Q. What kind of deal did you make with the State to testify here today?
A. My deal to testify for the State was that my charge would be dropped to accessory after the fact of second degree murder, that they would suggest five years, which is the maximum sentence, *868 to my Judge and that my time would run concurrent with my Texas parole time.
Q. How long ago was that deal made?
A. That was made, I would say, two months ago. The last part of the agreement to run my time concurrent with Texas was made last month.
Q. And until that portion of the agreement was made, were you telling the State that you would not testify unless they would allow those two sentences to run concurrent?
A. No, but I had expressed great concern for those, for that agreement, due to the fact that I have received threats from people for testifying. Mr. Kissinger has let people throughout the jail read my statement that I made to the Grand Jury or to the Detectives. I’m sorry people were coming to me and so I had to fear that I know in the Department of Corrections that once they know that I have testified against a person, that my chances of living were very slim. So I told them that part of my agreement to testify was that they come to an agreement that my time would be running concurrent with my Texas time, so I may be taken back to Texas.
Q. If the State had not agreed to allow your term to run concurrent, would you have testified today?
A. Honestly, no.
In her brief the prosecutor states that the grand jury indicted Devereaux for the crime of accessory. On December 10, 1990 defendant pled guilty before another judge and was sentenced to three years suspended. She says this suspension “was no doubt due to Judge Shea’s having learned during trial of concerns for Devereaux’s safety in person and having been informed that Devereaux was a parole violator in Texas” so that he could be shipped back to Texas to serve his sentence. The prosecutor argues that Devereaux’s statement that his charges would be dropped to accessory was a misconception on his part because this decision had been made by the grand jury, not the District Attorney.
In the first place, the choice of whom to believe in this instance, Devereaux or the prosecutor, is clear. We accept the statements of the prosecutor as true and the explanation as satisfactory. Even assuming, however, that a plea bargain was made with Devereaux, the defendant fails to show how he was prejudiced. The jury had the full benefit of Devereaux’s testimony and could consider the alleged advantage Devereaux obtained for testifying in weighing his credibility. His statement conveyed the impression to the jury that the state had some leverage over him.
The balance of defendant’s assignments are directed to the sufficiency of the evidence. The standard of review is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found that the state proved the essential elements of the crime beyond a reasonable doubt. In this case the state’s burden was to prove that defendant had specific intent to kill or inflict great bodily harm on McCoy or that the defendant was engaged in one of nine enumerated felonies although lacking the said intent to kill or to inflict great bodily harm. In appellate review the court accepts the jury’s evaluation of the credibility of the witnesses. Consequently, we accept Dev-ereaux’s testimony as true notwithstanding our own repugnance of him. Taken as true, his testimony, already summarized along with the other testimony is quite sufficient to support the conviction.
Accordingly, the conviction and sentence are affirmed.
AFFIRMED.